IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHWAY CARRIERS, INC., and IVAN BOJIC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

NOW COMES the plaintiff, PNC Bank, National Association, (the "Plaintiff" or "PNC"), by and through its attorneys, McFadden & Dillon, P.C., and for its Verified Complaint (the "Complaint") against the defendants, Southway Carriers, Inc., ("Southway") and Ivan Bojic ("Mr. Bojic") (together the "Defendants") alleges as follows:

## COUNT I
### Breach of Contract

1. This Court has original subject matter jurisdiction in this lawsuit pursuant to 28 U.S.C. §1332(a) because the matter in controversy is between citizens of different states and the damages claimed exceed the sum of $75,000.00, exclusive of interest and costs.

2. This Court has personal jurisdiction over the defendants pursuant to 735 ILCS 5/2-209(a)-(c).

3. Venue is proper in this district pursuant to 28 U.S.C. §1391.

4. PNC is a national banking association. Its main office is in the State of Delaware, and its principal place of business is in the Commonwealth of Pennsylvania.

1

5. On information and belief, Southway is an Illinois corporation with its principal place of business located in DuPage County, Illinois.

6. On information and belief, Mr. Bojic is a resident of the State of Florida with an address of 13693 Mandarin Drive., Naples, FL 34109.

7. On March 27, 2023, in his capacity as president of Southway, Mr. Bojic executed and submitted to PNC a business loan application (the "Loan Application"). A true and correct copy of the Loan Application is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.

8. By virtue of its execution of the Loan Application, Southway also agreed to be bound by the terms and conditions set forth in a certain small business loan agreement dated March 27, 2023 in the original principal amount of $95,000.00 (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference.

9. Pursuant to the terms and provisions of the Loan Application, any subsequent request of Southway for credit under the Loan Agreement would be deemed conclusive evidence that Southway had received and agreed to the terms and conditions set forth in the Loan Agreement. <u>See</u>, Exhibit A, Section 2(iii).

10. Subsequent to March 27, 2023, Southway requested credit under the Loan Agreement which PNC disbursed to Southway pursuant to the terms and provisions of the Loan Agreement.

11. Thereafter, Southway defaulted under the terms and provisions of the Loan Agreement as a result of, among other things, its failure to make timely payments when due.

12. Southway's default under the Loan Agreement constitutes a breach of the obligations it owed to PNC under the terms and provisions set forth therein.

13. As a result of Southway's breach of its obligations owed to PNC under the Loan Agreement there is now due and owing to PNC the following amounts as of December 13, 2024:

| | |
|---|---|
| **Principal Balance:** | $ 87,780.21 |
| **Interest:** | $ 12,137.76 |
| **Late Charges:** | $      600.00 |
| **Total Amount Due:** | $ 100,517.97 |

14. Interest continues to accrue in accordance with the terms and provisions of the Loan Agreement at a per diem rate of $27.13.

15. Pursuant to the terms and provisions of the Loan agreement, Southway agreed to pay the attorney's fees and legal expenses incurred by PNC as a result of Southway's default. See, Exhibit B, Section 14.

16. PNC performed all obligations required of it under the Loan Agreement.

## COUNT II
## Breach of Guaranty

17. PNC re-alleges and incorporates the allegations set forth in Paragraphs 1-16 as if full stated herein.

18. By virtue of his execution of the Loan Application, Mr. Bojic in his individual capacity, also agreed to be bound by the terms and provisions of the guaranty provision (the "Guaranty") set forth in the Loan Application. See, Exhibit A, Section 3.

19. Pursuant to that Guaranty Mr. Bojic unconditionally guaranteed the performance of the obligations owed to PNC by Southway under the Loan Agreement.

20. Southway has defaulted in its performance of the obligations it owed to PNC under the terms and provisions of the Loan Agreement.

21. Mr. Bojic has failed to make payment of the amounts he owed to PNC under the terms and provisions of the Guaranty by virtue of Southway's default under the terms and provisions of the Loan Agreement.

22. Mr. Bojic's failure to make payment of the amounts owed to PNC under the terms and provisions of the Guaranty constitutes a breach of the obligations he owed to PNC under the Guaranty.

23. As a result of Mr. Bojic's breach of the obligations he owed to PNC under the Guaranty there is now due and owing to PNC the following amounts as of December 13, 2024:

| | |
|---|---|
| **Principal Balance:** | $ 87,780.21 |
| **Interest:** | $ 12,137.76 |
| **Late Charges:** | $      600.00 |
| **Total Amount Due:** | $ 100,517.97 |

24. Interest continues to accrue in accordance with the terms and provisions of the Loan Agreement and Guaranty at a per diem rate of $27.13.

25. Pursuant to the terms and provisions of the Guaranty, Mr. Bojic agreed to pay the reasonable attorney's fees, costs, and the expenses of litigation incurred by PNC in the event of a breach of the obligations he owed to PNC. See, Exhibit A, Section 3.

26. PNC has performed all obligations it owed to Mr. Bojic and Southway under the terms and provisions of the Guaranty and Loan Agreement.

**WHEREFORE**, plaintiff, PNC Bank, National Association, respectfully requests that this Honorable Court (i) enter a judgment in its favor and against the defendant, Southway Carriers, Inc. on Count I of the Complaint in the amount of $100,517.97 together with accrued interest and charges as provided in the Loan Agreement; (ii) enter a judgment in its favor and against the defendant, Ivan Bojic on Count II of the Complaint in the amount of $100,517.97, together with accrued interest and charges as provided in the Guaranty; (iii) award PNC, pursuant to the terms

and provisions of the Loan Agreement and Guaranty its costs and expenses, including reasonable attorney's fees and costs of litigation, necessarily incurred by PNC in enforcing its rights arising under the Loan Agreement and Guaranty; and (iv) grant such further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Kyle T. Dillon
An attorney for PNC Bank, N.A.

Thomas J. Dillon (ARDC#3124223)
Wendy Kaleta Gattone (ARDC#6226119)
Kyle T. Dillon (ARDC #6323818)
k.dillon@mcdillaw.com
MCFADDEN & DILLON, P.C.
120 S. LaSalle Street, Suite 1920
Chicago, Illinois 60603
(312) 201-8300
Atty. No. 26370

## VERIFICATION

Under penalties as provided by law pursuant to §1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

PNC BANK, NATIONAL ASSOCIATION:

By: *Stephanie Cook* (Signed by: 2S7A39B4C0DF4A2...)
Stephanie Cook an Assistant Vice President of the Commercial Asset Team and an authorized representative of PNC Bank, N.A.



# Business Loan Application

| SMALL BUSINESS LOAN |||
|---|---|---|
| [ ] Check here if this is for an increase or other modification to an existing Small Business Loan |||
| Loan Amount: $95,000.00 | Required Term: 60 | Business Loan Purpose: Working Capital (Not Business Credit) |
| **Loan Payment Authorization** (Automatic Payment is required. If you have an existing PNC Bank Business Checking Account, provide the following information) |||
| PNC Bank Business Account Number: 4732053093 | Name on Account: SOUTHWAY CARRIERS INC ||

| BORROWER INFORMATION: ||||
|---|---|---|---|

| LEGAL BUSINESS ENTITIES (required for Legal Business Entities) ||||
|---|---|---|---|
| Entity Type: S Corp ||||
| Business Legal Name (should match Secretary of State Filing/Good Standing Certificate): SOUTHWAY CARRIERS, INC. ||| Tax Identification Number: 45-3552215 |
| Business Address (no P.O. Boxes) 17W735 BUTTERFIELD RD STE A | City OAKBROOK TERRACE | State Illinois | Zip Code: 60181-4206 |
| Mailing Address (if different from above) | City | State | Zip Code: |

| AGREEMENTS |
|---|
| 1. **Applicant**. The Applicant certifies that the statements made on this application (this "**Application**") and any other information provided in connection with this Application are true and complete. **THE APPLICANT CERTIFIES THAT ALL LOAN PROCEEDS WILL BE USED FOR BUSINESS PURPOSES.** The term "**Applicant**" means the individual or entity(ies) applying for the business Credit Facility (as defined below) (individually and collectively, if more than one, the "**Borrower**") and all other persons who by providing information herein may be liable for the Credit Facility (as defined below) requested in this Application as an endorser, surety, guarantor or who may be a principal of the Borrower. The Applicant agrees to promptly notify the Bank of any material changes to this information. If one or more of the Borrowers is a business entity, the Borrower agrees, that, if required, it shall provide certification(s) of beneficial owners in form and substance acceptable to the Bank (as executed and delivered to the Bank on or prior to the date of this Application and updated from time to time, the "**Certification of Beneficial Owner(s)**"). If the Borrower is or was required to execute and deliver to the Bank a Certification of Beneficial Owner(s), the Borrower represents and warrants, as of the date of this Application and as of the date each updated Certification of Beneficial Owners is provided to the Bank, that the information in the Certification of Beneficial Owners is true, complete and correct and the Borrower agrees to provide confirmation of the accuracy of the information set forth in the Certification of Beneficial Owners, or deliver a new Certification of Beneficial Owners as and when requested by the Bank and/or when any individual identified on the most recent Certification of Beneficial Owners as a controlling party and/or a direct or indirect individual owner has changed. The Applicant further agrees to provide such other information and documentation as may reasonably be requested by the Bank from time to time for purposes of compliance by the Bank with applicable laws (including without limitation the USA Patriot Act and other "know your customer" and anti-money laundering rules and regulations), and any policy or procedure implemented by the Bank to comply therewith. The Bank is requested and authorized to make all inquiries it deems necessary to verify accuracy of the information submitted and to determine the Applicant's creditworthiness, and to share any information (including personal information) provided to the Bank by or about any Applicant(s) with any third party (including national credit bureaus) that performs services for the Bank in connection with this Application or a Credit Facility (as defined below) or to whom this Application or any credit facility to the Borrower or any other Applicant may be transferred. The Applicant hereby requests and authorizes any person or consumer or business reporting agency to give the Bank or such third party any information it may have on the Applicant and authorizes the Bank or such third party to make inquiries of the Applicant's accountant directly and obtain any information it deems necessary in processing this Application. The Applicant authorizes the Bank and any transferee of this Application or Credit Facility (as defined below) to answer any questions about its credit experience with the Applicant. The Applicant understands that all fees, including commitment and documentation fees and annual credit review fees are non-refundable. In addition, the Borrower will pay all expenses, including but not limited to: documentation fees, annual fees, mortgage taxes, insurance premiums, recording and filing fees, appraisal fees, etc. associated with a Credit Facility (as defined below). By signing below, each Applicant, who is either the Borrower, a principal of the Borrower, or an individual guarantor(s) of its obligations hereby requests and provides written authorization to the Bank or its designee (and any assignee or |

potential assignee hereof) to obtain a personal credit profile from one or more national credit bureaus. Such authorization shall extend to obtaining a credit profile (i) in considering this Application, (ii) assessing creditworthiness and (iii) considering extensions of credit, including on an ongoing basis, as necessary for the purpose of (a) update, renewal, modification or extension of such credit or additional credit, (b) reviewing or collecting any resulting account and (c) reporting on the repayment and satisfaction of such credit obligations. A photocopy or facsimile copy of this authorization shall be valid as the original. By signing below, I/we further affirm and ratify our prior requests and authorizations provided with respect to the matters set forth herein. By signature below, each Applicant affirms the Applicant's identity as the respective individual identified in this Application.

2. **Terms and Conditions; Certain Agreements by Borrower**. If the Bank approves this Application, the Bank may, at its sole discretion, approve an unsecured small business loan (the **"Credit Facility"**). If the Bank approves this Application, the Bank will mail to the Borrower at the address specified for such party in this Application, the additional terms and conditions that will govern the Credit Facility (as amended or restated from time to time, the "**Terms and Conditions**"). The Borrower agrees that: (i) it shall be bound by all applicable provisions of the Terms and Conditions; (ii) all credit requested or obtained under the Credit Facility shall be subject to the Terms and Conditions; (iii) any request by the Borrower for credit under any Credit Facility shall be conclusive evidence that the Borrower has received and agreed to the Terms and Conditions; (iv) the Credit Facility will be disbursed and fees will be paid in accordance with the Loan Disbursement and Fee Collection Authorization attached to this Application; and (v) it shall pay or perform all loans, advances, debts, liabilities, obligations, covenants and duties owing to the Bank, of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower or such grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising (all such responsibilities and obligations are collectively referred as the "**Obligations**"). The Borrower agrees: (A) to immediately notify the Bank if it does not receive the Terms and Conditions within thirty (30) days after the date that the Borrower signed this Application as set forth below, and (B) to notify the Bank within five (5) business days (the "**Objection Period**") of receipt of the Terms and Conditions if the Borrower objects to being bound by the Terms and Conditions. If the Borrower so objects, the Borrower shall repay to the Bank, within the Objection Period, any proceeds of the Credit Facility which have been disbursed to, or on behalf of, the Borrower. If the Borrower does not object to the Terms and Conditions and repay any amounts owed to the Bank within the Objection Period, or otherwise uses or accepts any of the proceeds of the Credit Facility, the Borrower shall be deemed to have accepted and be bound by the Terms and Conditions.

3. **Guaranty**. This paragraph applies only to persons or business entities signing as "Personal Guarantors" or "Entity Guarantors". In consideration of the extension of credit from the Bank to the Borrower and other good and valuable consideration, each of the undersigned persons or business entities (individually, a "**Guarantor**" and collectively, the "**Guarantors**") hereby jointly and severally guarantees, and becomes surety for the Obligations. This guaranty is absolute, unconditional, irrevocable and continuing and will remain in full force and effect until all of the Obligations have been paid in full. This guaranty will not be affected by: any release by the Bank of any other party, guaranty or security held by it for any of the Obligations; any failure of the Bank to preserve its rights to any guaranty; or any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any guaranty thereof. This is a guaranty of payment and not of collection and the Bank shall not be required, as a condition of any Guarantor's liability, to make any demand upon or to first pursue any of its rights against any Borrower or particular Guarantor, or to pursue any rights which may be available to it with respect to any other person who may be liable for the payment of the Obligations. Each Guarantor hereby waives: notice of acceptance of this guaranty, notice of extensions of credit to the Borrower from time to time, notice of default, diligence, presentment, notice of dishonor, protest, or demand for payment. The Bank at any time and from time to time, without notice to or the consent of any Guarantor, and without impairing or releasing, discharging or modifying any Guarantor's liabilities hereunder, may: (a) change any of the Terms and Conditions relating to any of the Obligations; (b) renew, substitute, modify, amend or alter, or grant consents or waivers relating to, any of the Obligations, any other guaranties or any security for any Obligations; (c) apply any and all payments by whomever paid or however realized, to any Obligations of the Borrower in such order, manner and amount as the Bank may determine in its sole discretion; (d) deal with any other person with respect to any Obligations in such manner as the Bank deems appropriate in its sole discretion; (e) substitute, exchange or release any security or guaranty; or (f) take such actions and exercise such remedies as provided herein or any of the Terms and Conditions. Until the Obligations are paid in full, each Guarantor postpones and subordinates in favor of the Bank any and all rights, which such Guarantor may have to assert any claim against any Borrower or to any realization on any property of any Borrower. Each Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, recoupment, deduction or defense based upon any claim such Guarantor may have against any Borrower or other Guarantor or the Bank except payment of the Obligations. To the extent that the Bank incurs any costs or expenses in protecting or enforcing its rights under the Obligations or this guaranty, including reasonable attorneys' fees and the costs and expenses of litigation, such costs and expenses will be due on demand, will be included in the Obligations, and will bear interest from the incurring or payment thereof in accordance with the Terms and Conditions.

4. **Information Sharing**. Each Applicant understands that in order to serve our customers efficiently and offer a full range of financial services, the Bank shares customer transaction and experience information among the PNC Bank family of companies. PNC Bank companies also share personal information such as applications, financial statements and credit reports. By executing this Application, each Applicant expressly consents to the sharing of such information among PNC Bank companies unless such Applicant requests that the Bank not share this other personal information (except where such information is used by one PNC Bank company to service customer accounts for another) by calling the Bank at 1-877-BUS-BNKG (1-877-287-2654) or by writing to the Bank at: PNC Bank, P.O. Box 96066, Pittsburgh, Pennsylvania 15226 including the Applicant's name, address and account number(s) or Social Security/EIN number(s).

5. **Right of Setoff**. In addition to all liens upon and rights of setoff against the money, securities or other property of any Borrower or Guarantor given to the Bank by law, the Bank shall have, with respect to all Obligations and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and each Borrower and Guarantor hereby assigns, conveys, delivers, pledges and transfers to the Bank, all of its right, title and interest in and to, all deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand or notice. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of a default without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

6. **Dispute Resolution.**

   (a) **WAIVER OF JURY TRIAL**. FOR ANY DISPUTE THAT IS NOT ARBITRATED, AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER, EACH GUARANTOR, EACH GRANTOR AND THE BANK IRREVOCABLY WAIVES ANY AND ALL RIGHT SUCH BORROWER, GUARANTOR, GRANTOR OR BANK MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE BORROWER, EACH GUARANTOR AND EACH GRANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY AND IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS TRANSACTION.

   (b) **ARBITRATION OF DISPUTES**. The Borrower, each Guarantor, each Grantor or the Bank may elect to submit any and all disputes arising out of or relating to this instrument, any documents executed in connection with this instrument, or any transaction contemplated in any of such documents, or any breach thereof (a "**Dispute**") to binding arbitration

   (i) Arbitration. Any arbitration shall be conducted pursuant to and in accordance with the AAA Commercial Arbitration Rules and, where applicable, the Supplementary Rules for Large, Complex Commercial Disputes, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. Such arbitration shall be conducted in a mutually acceptable location. Except as expressly set forth below, the procedures specified herein shall be the sole and exclusive procedures for the resolution of Disputes; provided, however, that the Borrower, each Guarantor, each Grantor or the Bank may seek provisional or ancillary remedies, such as preliminary injunctive relief, from a court having jurisdiction, before, during or after the pendency of any arbitration proceeding. The institution and maintenance of any action for such judicial relief, or pursuit of provisional or ancillary remedies, shall not constitute a waiver of the right or obligation of any party to submit any claim or dispute to arbitration. Nothing herein shall in any way limit or modify any remedies available to the Bank under this instrument, any documents executed in connection with this instrument, or any transaction contemplated in any of such documents or otherwise at law or in equity.

   (ii) Motion Practice. In any arbitration hereunder, the arbitrator(s) shall decide any pre-hearing motions which are substantially similar to pre-hearing motions to dismiss for failure to state a claim or motions for summary adjudication.

   (iii) Discovery. Discovery shall be limited to the pre-hearing exchange of all documents which the Borrower, each Guarantor, each Grantor, as applicable, and the Bank intend to introduce at the hearing and any expert reports prepared by any expert who will testify at the hearing.

   (iv) Sequential Hearing Days. At the administrative conference conducted by the AAA, the Borrower, each Guarantor, each Grantor, as applicable, and the Bank and the AAA shall determine how to ensure that the hearing is started and completed on sequential hearing days. Potential arbitrators shall be informed of the anticipated length of the hearing and they shall not be subject to appointment unless they agree to abide by the parties' intent that, absent exigent circumstances, the hearing shall be conducted on sequential days.

   (v) Award. The award of the arbitrator(s) shall be accompanied by a statement of the reasons upon which such award is based.

   (vi) Fees and Expenses. The Borrower, each Guarantor, each Grantor, as applicable, and the Bank shall each bear equally all fees and costs and expenses of the arbitration, and each shall bear its own legal fees and expenses and the costs of its experts and witnesses; provided, however, that if the arbitration panel shall award to a party substantially all relief sought by such party, then, notwithstanding any applicable governing law provisions, the other party shall pay all costs, fees and expenses incurred by the prevailing party and such costs, fees and expenses shall be included in such award.

   (vii) Confidentiality of Disputes. The entire procedure shall be confidential and none of the parties nor arbitrator(s) may disclose the existence, content, or results of any arbitration hereunder without the written consent of all parties to the Dispute, except (i) to the extent disclosure is required to enforce any applicable arbitration award or may otherwise be required by law and (ii) that either party may make such disclosures to its regulators, auditors, accountants, attorneys and insurance representatives. No conduct, statements, promises, offers, views, or opinions of any party involved in an arbitration hereunder shall be discoverable or admissible for any purposes in litigation or other proceedings involving the parties to the Dispute and shall not be disclosed to anyone not an agent, employee, expert, witness, or representative for any of such parties.

(viii) **CLASS ACTION WAIVER. THE BORROWER, EACH GUARANTOR AND EACH GRANTOR HEREBY WAIVES, WITH RESPECT TO ANY DISPUTE: (I) THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER; AND (II) THE RIGHT TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OF ANY OTHER PERSON.** The foregoing waiver is referred to herein as the "**class action waiver**". The Bank, the Borrower, each Guarantor and each Grantor agree that no arbitrator shall have authority to conduct any arbitration in violation of the class action waiver or to issue any relief that applies to any person or entity other than the Borrower, each Guarantor, each Grantor and/or the Bank individually. The parties acknowledge that this class action waiver is material and essential to the arbitration of any claims and is non-severable from this Dispute Resolution section. If the class action waiver is voided, found unenforceable, or limited with respect to any claim for which the Borrower seeks class-wide relief, then this Dispute Resolution section (except for this sentence) shall be null and void with respect to such claim, subject to the right to appeal the limitation or invalidation of the class action waiver. However, this Dispute Resolution section shall remain valid with respect to all other claims and Disputes. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

(ix) <u>Applicability of Federal Arbitration Act</u>. This instrument evidences transaction(s) in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Dispute Resolution section.

| SIGNATURES |
|---|

| **LEGAL ENTITY BORROWER** (All owners and principals of a For-Profit Legal Entity Borrower(s) must **ALSO** sign as individual guarantors) |
|---|
| If Borrower is a legal entity, the undersigned authorized representatives represent and warrant that: (i) they are duly authorized to execute and deliver, including to electronically execute and deliver, this Application and any other agreements in the name of and on behalf of such entity all in such form as may be requested by PNC, and any of which may contain a provision waiving the right to trial by jury; (ii) all necessary action to authorize the execution and delivery of this Application and such agreements has been properly taken; (iii) they are authorized to designate additional persons as authorized representatives who may request multiple draws or advances under an extension of credit, and perform all other actions and execute all such documents on behalf of the Borrower; and (iv) the Borrower is and will continue to be duly authorized to borrow under each Credit Facility and to perform all of the other terms and provisions of such agreements. |
| Name of Company:<br>SOUTHWAY CARRIERS, INC. |
| Name of authorized representative (print):<br>IVAN BOJIC |
| Title:<br>President |
| Signature: E-SIGNED by IVAN BOJIC on 03/27/2023 10:19:26:26 EDT — Date: March 27, 2023 |

| **INDIVIDUAL GUARANTOR(S)** |
|---|
| First Name Last Name (name exactly as on driver's license or state issued ID):<br>IVAN BOJIC |
| Signature (name only): E-SIGNED by IVAN BOJIC on 03/27/2023 10:19:29:29 EDT — Date: March 27, 2023 |

**SMALL BUSINESS LOAN**
**Loan Disbursement and Fee Collection Authorization:**

Borrower authorizes PNC Bank to disburse proceeds as directed below. Borrower further authorizes and directs PNC Bank to pay any and all fees, costs and expenses associated with the loan, including without limitation the costs and fees identified below, in the manner directed below. Each authorized representative of the Borrower is authorized to make this request, PNC Bank is entitled to rely conclusively on the below instructions to make disbursements and pay charges and fees in the amount and manner specified.

**Disbursements** (**check all that apply**)
[ ] Payoff and Close PNC Bank loan, in the name of _____, Loan No. _____.
[ ] Payoff and Close PNC Bank loan, in the name of _____, Loan No. _____.
[ ] Payoff and Close PNC Bank loan, in the name of _____, Loan No. _____.
[ ] Apply $_____ to pay down PNC Bank loan in the name of _____, Loan No. _____.
[ ] Apply $_____ to pay down PNC Bank loan in the name of _____, Loan No. _____.
[ ] Apply $_____ to pay down PNC Bank loan in the name of _____, Loan No. _____.
[ ] Wire transfer funds in the amount of $_____ to the bank named below to pay the Loan/Account No. named below as follows:

_____     _____
Bank                                                                                              ABA Transit Number
_____     _____
Account Title                                                                                    Account Number
[ ] Issue a Cashier's Check in the amount of $_____, payable to _____.
[ ] Issue a Cashier's Check in the amount of $_____, payable to _____.
[**X**] Deposit $**95,000** in Borrower's PNC Bank business account, Account No. **4732053093**.

**Fees**
Please pay any applicable fees and charges indicated below in the following manner (**check one**):

[ ] Borrower will deliver to PNC a check in the amount of the below charges simultaneously herewith.
[ **X**] Please debit PNC Bank Account Number **4732053093**.
[ ] Please make an additional advance under the Credit Facility (lines of credit only) in the amount of the below charges.
[ ] Other (specify) _____.

| | | |
|---|---|---|
| Loan Closing Fee | | $950.00 |
| Commitment Fee | | $_____ |
| Amendment Fee | | $_____ |
| Renewal Fee | | $_____ |
| Attorney Fee | | $_____ |
| Other | | $_____ |
| | TOTAL: | $950.00 |

PNC Bank, National Association
MS: F6-F266-04-G
8800 Tinicum Blvd
Philadelphia, PA 19153-3198



**BUSINESS BANKING**

March 27, 2023

SOUTHWAY CARRIERS INC
17W735 BUTTERFIELD RD STE
OAKBROOK TERRACE, IL 60181-4206

0035

## SMALL BUSINESS LOAN AGREEMENT

**Borrower:**
SOUTHWAY CARRIERS INC
17W735 BUTTERFIELD RD STE
OAKBROOK TERRACE, IL 60181-4206

**Bank:**
PNC Bank, National Association
222 Delaware Avenue
Wilmington, DE 19801
Attn: Business Banking.

**Principal Amount:**
$95,000.00

**Origination Fee:**
$950.00

**Amount Financed:**
$95,000.00

**Interest Rate (Fixed):**
11.28%

**Effective Date:**
March 27, 2023

**Monthly Payment Amount:**
$2,087.45

**Payment Due Date:**
Payments due on the twenty seventh day of each month beginning April, 2023.

**Term of Loan:**
60

ACLD0002  03272023APSF003501S



**BUSINESS BANKING**

## SMALL BUSINESS LOAN AGREEMENT
## TERMS AND CONDITIONS

We are pleased to have you as a customer and to provide you with a copy of these terms and conditions (together with the preceding first page, the "Terms and Conditions") governing the term loan (the "Loan" or "account") provided to you by us. These Terms and Conditions are an important part of your Business Banking Term Loan Agreement. Please read these Terms and Conditions carefully. Your use or acceptance of any Loan proceeds will be deemed additional evidence of your agreement to these terms.

**1. DEFINITIONS.** In this Agreement, the following definitions apply:

"Agreement" means your application for the Loan and this Business Banking Term Loan Agreement and any amendment or addenda to this Agreement.

"We," "us," "our" or "Bank" means PNC Bank, National Association or any person or entity to whom the rights of the Bank have been assigned.

"You," "your," "yours" or "Borrower" means the individual(s) or entity (ies) identified on the first page of these Terms and Conditions as a Borrower, who have applied to the Bank for the Loan, and for whom the Loan has been approved.

"Billing Cycle" means the interval between Payment Due Dates.

"Effective Date" means the "Effective Date" identified on the first page of these Terms and Conditions.

"Payment Due Date" means the date shown on the first page of these Terms and Conditions on which payments on the Loan will be due. The Payment Due Date will be determined by the Bank at the Bank's discretion.

**2. GENERAL DESCRIPTION OF THE LOAN.** The Loan is a term loan, sometimes called an installment loan, which is to be repaid in monthly installments over the Term of Loan specified on the first page of these Terms and Conditions. **ALL PROCEEDS OF THE LOAN MUST BE USED ONLY FOR BUSINESS PURPOSES.** You represent that none of the proceeds of the Loan will be used for personal, family, or household purposes. Equal monthly installments will be required to repay the Amount Financed, specified on the first page of these Terms and Conditions. Interest will accrue on a daily basis on the unpaid balance of the Amount Financed from the date the Loan is made at a rate that may change from time to time. Each new rate will apply to the outstanding balance on the Amount Financed until the rate changes again.

**3. HOW YOU AGREE TO THE TERMS OF THIS LOAN.** Applying for the Loan or using the proceeds of the Loan constitutes your agreement with us to be bound by this Agreement.

**4. YOU AGREE:**
a) to repay all amounts advanced hereunder together with interest as provided in this Agreement;
b) to give us such financial statements and other information as we may request from time to time;
c) to pay us costs of collection, including court costs and reasonable legal fees and expenses allowed by law, if we refer your account to an attorney for collection;
d) not to give us false information or signatures at any time or let anyone who is not a Borrower use this account;
e) to pay a late charge, as provided in Section 8 of these Terms and Conditions, for each month any payment is not made within fifteen (15) days of its Payment Due Date;
f) to honor any and all other promises that you make in this Agreement;
g) to not create, incur, assume or suffer to exist any indebtedness for borrowed money other than (x) obligations owing to PNC Bank, and (y) open account trade debt incurred in the ordinary course of business and not past due;
h) to not declare or pay any dividends on or make any distribution with respect to any class of the Borrower's equity or ownership interest, or purchase, redeem, retire or otherwise acquire any of the Borrower's equity;
i) to not make or permit, any change in the composition of the Borrower's current executive management or its equity ownership; and
j) to not make acquisitions of all or substantially all of the property or assets of any person, firm, corporation or other entity.

**5. SECURITY INTEREST.** Money on deposit with us and property held by us secure the Loan made, and all other amounts outstanding, under this Agreement; collateral securing other obligations to us may also secure the Loan and other amounts outstanding under this Agreement, provided, however, that any such collateral is not intended to include real property, and we hereby disclaim the applicability of any lien on such real property.

**6. INTEREST.** The outstanding balance of the Amount Financed will bear interest at a fixed rate per annum. Subject to our right to increase the interest rate by exercise of our rights pursuant to Section 9, the Interest Rate is set forth on the first page of these Terms and Conditions. Interest on the balance of the Amount Financed outstanding from time to time is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate on the first day of the Billing Cycle over a year of 360 days to obtain a daily periodic rate, multiplied by the average daily balance during the Billing Cycle, multiplied by the actual number of days in the Billing Cycle. Under no circumstances will the interest rate on the Amount Financed be more than the maximum rate allowed by applicable law.

**7. MONTHLY PAYMENTS.** You agree to pay us, in U.S. dollars, monthly payments of principal and interest each month on the Payment Due Date in an amount so that the Amount Financed is paid in full in equal monthly payments over the Term of the Loan. The final monthly payment will be for all principal, accrued unpaid interest, and all other amounts due in accordance with the terms of this Agreement. Your payments must be sent to us at the address shown on your monthly billing statement or at such other place as we may designate in writing. For so long as you have authorized us to automatically deduct your monthly payments due each month from a checking account with us and designated by you ("Primary Checking Account"), the deduction will occur on or about the Payment Due Date. Unless otherwise agreed in writing or required by applicable law, payments will be applied first to any accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and any late charges.

**8. LATE CHARGES.** If you fail to pay us any payment due within fifteen (15) days of Payment Due Date, we may charge you a late charge of $100 or 5% of the amount past due, whichever is less.



**9. AUTOMATIC PAYMENT; DEPOSITORY.** You agree to establish and maintain a business checking account with us during the term of this Agreement which shall be your primary depository account. You authorize us to automatically deduct your monthly payments on the account from the Primary Checking Account. If there are insufficient collected and available funds in the Primary Checking Account, we will not be required to advance funds to cover the payment. We reserve the right to terminate the automatic payment service at any time, with or without cause. If you revoke your authorization for us to automatically deduct your monthly payments on the account from the Primary Checking Account for any reason whatsoever or fail to maintain a checking account with us which may be charged for the monthly payments, we may, at our option, upon thirty (30) days' notice to you, increase the fixed Interest Rate set forth on the first page of these Terms and Conditions by twenty-five (25) basis points (0.25%).

If you fail to establish and maintain your primary depository account with us, we may, at our option, upon thirty (30) days' notice to you, increase the fixed Interest Rate set forth on the first page of these Terms and Conditions by up to one hundred (100) basis points (1.00%).

Our right to increase the fixed Interest Rate pursuant to this Section shall be in addition to any other rights or remedies we may have, all of which are hereby reserved, and shall not constitute a waiver, release or limitation upon our exercise of any such rights or remedies.

**10. PREPAYMENT.** You may prepay all or any portion of the amount owed earlier than it is due. Upon any such payment by you (whether voluntary, on default or otherwise), you shall pay us, as compensation for the cost of being prepared to advance funds at a fixed rate of interest, a prepayment fee calculated as follows (the "Prepayment Fee"): (i) five percent (5.00%) of any principal amount prepaid during the first year after the Effective Date identified on the first page of these Terms and Conditions; (ii) four percent (4.00%) of any principal amount prepaid during the second year after the Effective Date identified on the first page of these Terms and Conditions; (iii) three percent (3.00%) of any principal amount prepaid during the third year after the Effective Date identified on the first page of these Terms and Conditions; (iv) two percent (2.00%) of any principal amount prepaid during the fourth year after the Effective Date identified on the first page of these Terms and Conditions; (v) one percent (1.00%) of any principal amount prepaid during the fifth year after the Effective Date identified on the first page of these Terms and Conditions; and (vi) there shall be no Prepayment Fee with respect to any principal amounts prepaid thereafter. Any prepayment arising out of or relating to the direct or indirect refinancing of the Loan shall be deemed a prepayment subject to the payment of a Prepayment Fee calculated in accordance with this paragraph. The Prepayment Fee shall also apply to any payments made after acceleration of the maturity of the Loan. Early payments will not relieve you of your obligations to continue to make payments of principal and interest. Rather, they will reduce the principal balance due and may result in your making fewer payments.

**11. CREDIT REVIEW.** By accepting the Loan, each Borrower who is an individual hereby requests and provides written authorization to us to check the Borrower's credit and employment history and to answer any questions about our experience with you. You also request and authorize us to obtain from and exchange information (including personal information) with our affiliates, correspondents, and any third party (including national credit bureaus) that performs services for us in connection with the Loan or to whom the Loan may be transferred. Such authorization shall extend to obtaining a credit profile in (i) considering the account, (ii) assessing creditworthiness and (iii) considering extensions of credit, including on an ongoing basis, as necessary for the purposes of (a) update, modification or extension of such credit or additional credit, (b) reviewing, administering or collecting the resulting account and (c) reporting on the repayment and satisfaction of such credit obligations. If you ask, we will tell you whether or not a consumer credit report was requested from a credit bureau and the name and address of the credit bureau(s) that provided the consumer credit report. At our option, we may also obtain updated income verifications on you as is reasonably necessary to protect our interests. Each Borrower who is an individual further acknowledges that acceptance of this facility constitutes such Borrower's ratification of its prior requests and authorizations with respect to the matters set forth herein.

**12. CUSTOMER INFORMATION.** You understand that we share transaction information with PNC Bank affiliates and with any third party that performs services for us in connection with the Loan or to whom the Loan may be transferred. We may also share other information you or a third party may provide. If you do not want us to share personal, non-transaction information with PNC Bank affiliates or such third parties, please write us at PNC Information Sharing Options, P.O. Box 96066, Pittsburgh, Pennsylvania 15226. Be sure to include your name, address, account number(s) or Social Security/EIN number (s). Alternatively, you can also contact us via phone at 1-800-762-2118.

**13. DEFAULT.** You will be in default if any of the following happens:
a) If you fail to pay any payment when it is due;
b) If you use the proceeds from this account for a purpose not permitted under this Agreement;
c) If you or any guarantor fail to provide us with an updated financial statement or other financial information upon our request;
d) If you die, are put in jail, or if a court with proper jurisdiction to do so finds that you are incapacitated;
e) If you make an assignment for the benefit of creditors, if you are or become insolvent, if a receiver is appointed for any part of your property, or if bankruptcy or receivership proceedings are filed by or against you;
f) If anyone files a lawsuit or gets a judgment against you, or attaches or levies on any property of yours;
g) If you do not notify us within ten (10) days of any change in your address;
h) If you have made any untrue statements or have provided us with false information or signatures at any time;
i) If you fail to keep any promise or perform any duty in this Agreement or any other loan or agreement with us;
j) If you default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of your property or your ability to repay this account or perform your obligations under this Agreement;
k) If any creditor tries to take any of your property on or in which we have a lien or security interest (this includes a garnishment of any of your accounts with us);
l) If a material adverse change occurs in your financial condition, or we believe the prospect of payment or performance of the account is impaired;
m) If you fail to establish and maintain your primary deposit account with us;
n) If any of the events described in this default section occurs with respect to any guarantor of this account;
o) If any guarantor seeks, claims or otherwise attempts to limit, modify, revoke such guarantor's guaranty of this account or any other loan with us;
p) If we, in good faith, deem ourselves insecure; or
q) If you cease doing business as a going concern.

**14. OUR RIGHTS UPON DEFAULT.** If any event described in Sections 13 (e), (f), or (k) happens, all amounts which you owe us under this Agreement shall be immediately due and payable without prior notice to you, or right to cure, except as may be required by law. If any other event specified in Section 13 occurs, all amounts which you owe us under this Agreement shall be due and payable immediately, at our option, without prior notice to you, or right to cure, except as may be required by law. The other provisions of this Agreement will continue to apply to the Loan. If we get a judgment after default and/or you are a debtor in an action filed by or against you under the Bankruptcy Code, unless prohibited by applicable law the rates applicable to the Loan will continue to apply to the balances on the Amount Financed. A default under this Agreement is a default under every other note, loan agreement or security agreement that you have with us.

Upon default, if we declare the entire outstanding principal, unpaid interest, fees and charges on the Loan immediately due and payable, you must pay that amount immediately. Upon your default we may increase the interest rate up to five percentage points (5%) over the rate on the Loan, if allowed by law. We may hire or pay someone else to help us collect the Loan if you fail to pay in accordance with this Agreement. You agree to pay our collection costs (including, without limitation, the cost of in-house attorneys and staff), whether or not we hire anyone else to help us collect the Loan. This includes, subject to any limits under applicable law, our attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services. In addition to all other sums provided by law, you will also pay any court costs if not prohibited by applicable law.

**PNC BANK**                                                    **BUSINESS BANKING**

**15. FEES.** The Loan is subject to the Origination Fee described on the first page of these Terms and Conditions. The Origination Fee will be subtracted from the proceeds of the Amount Financed on the day the Loan is disbursed and is not refundable.

**16. TERMINATION BY YOU.** You may terminate this Agreement at any time that you are not in default by: (i) mailing or delivering a written notice to us that you are terminating this Agreement; and (ii) paying us the outstanding balance of the Amount Financed, all accrued and unpaid interest on the balance, and all other amounts due in accordance with the terms of this Agreement.

**17. TERMINATION BY US.** Upon sixty (60) days prior written notice to you (the "Termination Notice"), we may, with or without cause, demand full payment of the outstanding balance of the account, the accrued and unpaid interest on the balance, and all other amounts due in accordance with the terms of this Agreement. Unless the Termination Notice provides otherwise, on the date that is sixty (60) days after the date of the Termination Notice, the then outstanding principal balance of the account, plus all accrued and unpaid interest, and all other amounts due under this Agreement shall be due and payable.

**18. AMENDMENT OF AGREEMENT.** We may amend this Agreement from time to time, in any respect, by giving you written notice where required by law. Such amendments will apply to outstanding balances except as otherwise indicated in the written notice. If you do not agree to be bound by the terms of any amendment, you must notify us of your election to terminate the Loan pursuant to the "Termination by You" section of these Terms and Conditions within thirty (30) days after the date we sent you our notice of the amendment. We may modify this account without the consent of or notice to, anyone other than the party with whom the modification is made.

**19. YOUR RESPONSIBILITIES TO US.** If more than one person is identified as Borrower, each and all of you are equally responsible, individually and together, to us for payment in full of the Loan.

**20. REMEDIES CUMULATIVE.** Our remedies under this Agreement shall be cumulative and not alternative.

**21. DELAY IN ENFORCEMENT.** We can delay in enforcing any of our rights under this Agreement without losing them. Any waiver by us of any provision of this Agreement will not be a waiver of the same or any other provision on any other occasion.

**22. ASSIGNMENT.** You may not assign or otherwise transfer your rights and privileges under this Agreement, or delegate your obligations to repay amounts you owe us. Any attempt by you to assign or delegate will be void and of no effect. We may assign any and all of our rights under this Agreement at any time without your consent. A person(s) to whom we assign this Agreement shall be entitled to all of our rights under this Agreement. None of your rights or obligations shall be effected by such assignment.

**23. SUCCESSORS AND ASSIGNS.** This Agreement will be binding upon you and us, and our respective heirs, executors, administrators and successors, as well as on our assigns.

**24. REPLACEMENT OF PRIOR AGREEMENTS.** This Agreement replaces all earlier agreements and governs all balances on the Loan, including balances carried over onto the Loan from any prior account, just as if it had been in effect before the advancing of the Loan.

**25. GOVERNING LAW AND CONSTRUCTION; SERVICE OF PROCESS; JURISDICTION.** This Agreement has been delivered to and accepted by us and will be deemed to be made in the State of Delaware. Regardless of the State of your residence, or the place to which the Borrower submitted an application, you agree that the provisions of this Agreement related to interest, charges and fees shall be governed by and constructed , in accordance with federal law and, as made applicable by federal law, Delaware law. Unless preempted by federal law, all other substantive terms and provisions also shall be governed by and construed in accordance with the laws of the State of Delaware, including without limitation the Electronic Transactions Act (or equivalent) in effect in the State of Delaware (or, to the extent controlling, the laws of the United States of America, including without limitation, the Electronic Signatures in Global and National Commerce Act), excluding its conflict of laws rules, except to the extent that such laws have been preempted or superseded by federal law. You irrevocably consent to the exclusive jurisdiction of any state or federal court located in the State of Delaware, and consent that all service of process may be sent by nationally recognized overnight courier service directed to you at your address set forth on the first page of these Terms and Conditions and service so made will be deemed to be completed on the business day after deposit with such courier; provided that nothing contained in this Agreement will prevent us from bringing any action, enforcing any award or judgment or exercising any rights against you individually, against any security or against any of your property within any other county, state or other foreign or domestic jurisdiction. You acknowledge and agree that the venue provided in this paragraph is the most convenient forum for both you and us. You waive any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

**26. SEVERABILITY.** If any provision of this Agreement is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**27. GENERAL PROVISIONS.** To the fullest extent allowed by law, you and any other person who guarantees or is otherwise liable for the Loan waive any applicable statute of limitations, presentment, demand for payment, protest, notice of dishonor, and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of the Loan and this Agreement. Upon any change of this Agreement, and unless otherwise expressly stated in writing, no party obligated on the Loan, directly or as a guarantor, shall be released from liability. We may renew or extend (repeatedly and for any length of time) the Loan, or release any party or guarantor or collateral; and take any other action deemed necessary by us without the consent of or notice to, anyone. We may modify the Loan without the consent of, or notice to, anyone other than the party with whom the modification is made.

**28. NOTICES.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and, except as otherwise provided in this Agreement, will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including without limitation, electronic mail, first-class mail, facsimile transmission and commercial courier service, which methods are hereby agreed to as acceptable methods for giving Notices. In addition, the parties agree that Notices may be sent electronically to any electronic address provided by a party from time to time. Regardless of the manner in which provided, Notices may be sent to a party's address as set forth on the first page of these Terms and Conditions or to such other address as any party may give to the other for such purpose in accordance with this section. Any notice to us which is required by this Agreement must be sent to us at the address set forth on the first page of these Terms and Conditions.

**29. ELECTRONIC SIGNATURES AND RECORDS.** Notwithstanding any other provision herein, you agree that the Agreement, any amendments thereto, and any other information, notice, signature card, agreement or authorization related thereto (each, a "Communication") may, at our option, be in the form of an electronic record. Any Communication may, at our option, be signed or executed using electronic signatures. For the avoidance of doubt, the authorization under this section may include, without limitation, use or acceptance by us of a manually signed paper Communication which has been converted into electronic form (such as scanned into PDF format) for transmission, delivery and/or retention.

ACLD0002            Page 4

03272023APSF003501S